**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN R. SULLIVAN,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>        Defendant. | **Case No. 1:15-cv-00376-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.   INTRODUCTION**

Plaintiff, Susan R. Sullivan ("Plaintiff" or "Sullivan"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act ("SSA Act"). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence and the case is remanded to the agency for further proceedings.

**II.   PROCEDURAL BACKGROUND**

A prior application for disability benefits filed by Sullivan was denied on August 18,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF No. 8-9).

1

2008. AR 19, 155.[2]  Sullivan refiled the application for SSI under review in this case on May 25, 2010. AR 362. The 2010 application alleged a disability onset date of September 1, 1997. AR 19, 362.  Sullivan requested a hearing before an Administrative Law Judge (AR 44), and the ALJ heard the case on May 28, 2014 (AR 53).  Sullivan was found not disabled by decision dated August 18, 2014. AR 46.  The Appeals Council denied Sullivan's appeal, rendering the order the final decision of the Commissioner. AR 1-3.  Sullivan filed the complaint for judicial review in this Court on March 8, 2015, pursuant to 42 U.S.C. §§ 405(g) to review the final decision of the Commissioner.

### III.     ISSUES FOR JUDICIAL REVIEW

Sullivan challenges the Commissioner's decision concerning the 2010 application, arguing that: (1) the ALJ impermissibly reopened her prior application; (2) the ALJ improperly assessed her mental impairment at step two of the analysis; (3) the ALJ's mental residual functional capacity ("RFC") evaluation is unsupported; and (4) the ALJ did not properly consider her chronic obstructive pulmonary disease ("COPD"). (ECF No. 17, p. 9.)  Sullivan argues that the Court should reverse and remand with instructions to determine Sullivan's onset date of disability and award benefits accordingly. (*Id*., p. 22; ECF No. 23, p. 4).  The Commissioner opposes each of these arguments. (ECF No.  20).

### IV.     SULLIVAN'S MEDICAL IMPAIRMENTS

Sullivan was 48 years old on the date of her 2010 application, and 53 years old when the ALJ issued the decision denying benefits. AR 83.  She left school in the 9th grade and obtained a work permit at age 16. AR 502. Her previous employment included landscaping, a nurse's aide, and work for a cannery. *Id*.  Sullivan's medical history includes cerebral vascular accident, cognitive disorder, major depressive disorder, Eustachian tube dysfunction, headaches, poor eyesight, arthritis, COPD, borderline intellectual functioning, and other physical aches and pains in her back, hips, knees and hands. AR 459, 495, 500-02, 505, 511, 516, 608. She testified that her impairments of depression, physical pain, memory issues, problems focusing, confusion, stress intolerance, anhedonia, panic attacks, incontinence, comprehension, and difficulty

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

breathing prevent her from working. AR 58-59, 64-68, 73, 77, 80.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1502(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1502(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Sullivan did not meet the disability standard. AR 46. In particular, the ALJ found that Sullivan had not engaged in substantial gainful activity since May 25, 2010, the application date. AR 23. Further, the ALJ identified depression, anxiety disorder, obesity, and chronic pulmonary disease as severe impairments. *Id*. The ALJ also determined that Sullivan does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 26. Based on a review of the entire record, the ALJ determined that Sullivan had the RFC to perform light work (20 CFR § 416.967(b)) except that:

> [Sullivan] can never climb ladders[,] ropes or scaffolds. She can frequently stoop and crouch. She can frequently handle objects (gross manipulation) with the right hand. She must avoid all exposure to excessive vibration, and concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases. She should avoid concentrated exposure to poorly ventilated areas. Work is limited to simple, as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2, as routine and repetitive. She needs to work in a low stress job, as defined as having only occasional decision making only occasional changes in a work setting. She can have occasional interaction with the general public and only occasional interaction with coworkers.

AR 28. The ALJ determined Sullivan had no past relevant work. AR 44. The ALJ found that Sullivan was 48 years old on the date of application, which is defined as an individual closely approaching advanced age (20 C.F.R. § 416.963). A.R. 45. Furthermore, the ALJ found that Sullivan had limited education and was able to communicate in English. *Id*. Based on the RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Sullivan can perform, such assembler of small products, bottle packer, and bottle line attendant. *Id*.

## IV.   STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

4

decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**V.   DISCUSSION**

**A. The ALJ Did Not Reopen the Prior Disability Proceedings.**

Sullivan argues that ALJ reopened the prior proceeding on her 2006-08 application for benefits by reweighing the medical opinions that were also considered in the prior proceeding. (ECF No. 17, pp. 15-16.) Due to the alleged reopening, Sullivan maintains that the prior denial of benefits does not have a preclusive, *res judicata* effect on the instant proceedings, and this Court may find that Sullivan was disabled going back to 2006, the year of the prior application. (ECF No. 23, p. 3).

With respect to reopening a prior application, the Ninth Circuit Court of Appeals has provided as follows:

> A decision of the Secretary declining to reopen a claim is not judicially reviewable. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). This court has held, however, that we will examine the record to determine whether or not a reopening has occurred. A reopening, and thus a waiver of any claim of administrative *res judicata*, will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits ..." *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir.1985). *See also Purter v. Heckler*, 771 F.2d 682 (3d Cir. 1985). It is not our role to determine whether the Secretary had good cause for reopening, for in that respect his decision is not judicially reviewable. Rather, we look at the administrative record to determine whether an explicit or a *de facto* reopening has occurred. *See Cleaton v. Secretary, Dept. of Health and Human Services*, 815 F.2d 295 (4th Cir. 1987); *Jelinek v. Heckler*, 764 F.2d 507 (8th Cir. 1985); *Taylor v. Heckler*, 738 F.2d 1112 (10th Cir. 1984); *McGowen v. Harris*, 666 F.2d 60 (4th Cir. 1981).

*Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987) *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002).  Here, Sullivan did not appeal the Commissioner's decision dated August 18, 2008.  Thus, absent reopening, Sullivan may not contend that she was disabled during the period of the prior application. *See Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985).  Where an ALJ expressly refuses to reopen a prior proceeding, the district court is without jurisdiction to review a prior final determination that a claimant was disabled during a period of time. *See Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985) (providing that district courts only have jurisdiction to review final decisions under 42 U.S.C.A. § 405(g) and an ALJ's decision not to re-open a previously adjudicated claim for social security benefits is purely discretionary and is therefore not considered a "final" decision within the meaning of § 405(g)).

The ALJ in this case expressly declined to reopen the prior proceedings and applied *res judicata* to the prior application period. AR 19.  The ALJ stated that he found "no basis whatsoever to reopen [the prior decision], and the finding that the claimant was not disabled through August 18, 2008 is administratively final." *Id*.  The ALJ further stated that:

> Exhibits from the prior application are included here.  The Exhibits which were part of the prior application are not to be considered in this application because the prior application is not being reopened.  That they are actually in this file and are listed on the List of Exhibits does not change anything.  If reference is made to those exhibits, it is only for purposes of comparison, to see if changes in circumstances have occurred, and not for the purpose of reopening.

AR 21.

Nevertheless, Sullivan asserts that a *de facto* reopening occurred here when the ALJ reweighed the 2008 opinion of Dr. Morse / Psychological Assistant ("PA") Chandler, which was also considered in Sullivan's prior application. (ECF No. 17, p. 15.)  The ALJ explained his decision to reweigh the opinion of Dr. Morse / PA Chandler as follows:

> The prior decision is administratively final, and I am in no way reopening that decision.  However, the opinion of Ms. Chandler was included as an exhibit in her current application, and was referenced by subsequent psychologists.  I am compelled to [weigh] this opinion, and I afford it very little weight.

AR 30.

Sullivan cites to *Gregory v. Bowen*, 844 F.2d 664 (9th Cir. 1988), and *Wolfe v. Chater*, 86 F.3d 1072 (11th Cir. 1996) for support that a *de facto* reopening of the prior application occurred here. (ECF No. 17 15-16.)  In *Gregory*, the court found it inappropriate to rigidly apply *res judicata* to a prior application period where the subsequent application raised a new issue of psychological impairments that were not previously considered in combination with the claimant's other impairments, and the claimant was not represented by counsel in the prior proceedings. *Gregory*, 844 F.2d at 666.  However, the Commissioner correctly points out here that, unlike *Gregory*, Sullivan has not raised a new psychological impairment and was represented by counsel for both applications. (ECF No. 20, p. 6.)

In *Wolfe*, the Eleventh Circuit Court of Appeals found that a third ALJ considering a claimant's application erred when the ALJ reconsidered the prior applications on the merits by finding that the other two ALJs had mischaracterized the claimant's educational level as "limited," when it was actually "marginal." *Wolfe*, 86 F.3d at 1079.  Sullivan contends that the situation here is analogous to *Wolfe* because the ALJ applied a different weight to a medical opinion that was considered by both ALJs, thus "disagreeing" with prior ALJ on the merits.

Unlike both *Gregory* and *Wolfe*, however, the ALJ in this case expressly refused to consider whether Sullivan was disabled prior to August 18, 2008, the date of the previous decision. AR 19, 21, 30.  Moreover, a *de facto* reopening does not occur merely because the ALJ considers evidence in a new proceeding that was also considered in a prior proceeding. *See, e.g., Browning v. Barnhart*, 61 F. App'x 503, 504 (9th Cir. 2003) (finding no reconsideration of the merits of the prior application where some evidence from the period encompassed by Sullivan's first application for benefits was considered only to point out that the evidence was consistent with the claimant's longstanding complaints); *see also, e.g., Wolfe*, 86 F.3d at 1079 (examination by ALJ of conflicting vocational expert testimony from two prior hearings was appropriate and did not constitute reopening of prior decisions).

The ALJ explained that he only considered the medical opinion of Dr. Morse / PA Chandler because it was relied upon by other psychologists after August 18, 2008, and was, therefore, relevant to the issue of whether Sullivan was disabled *after* the date of the subsequent

7

re-application at issue here. AR 30. Thus, the purpose of re-examining the medical opinions was not to reconsider the merits of the prior application, and there was not a *de facto* reopening of the prior proceedings. *See Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (providing that a *de facto* reopening occurs only where the Commissioner considers "on the merits" the issue of the claimant's disability during the already-adjudicated period and citing *Gregory*, 844 F.2d at 666).

**B. The ALJ Failed to Properly Consider All of Sullivan's Mental Impairments.**

Sullivan argues that the ALJ committed reversible error by failing to evaluate the severity of her cognitive disorder at step two of the sequential analysis. (ECF No. 17, pp. 16-17.) Sullivan contends that the ALJ improperly rejected the opinions of three examining psychologists, who found her limitations more limiting than the ALJ. (ECF No. 17, p. 17.) In response, the Commissioner argues that the ALJ adequately explained her reasons for rejecting the diagnoses of cognitive disorder, and any error was harmless because the ALJ found severe mental impairments at step two that were considered through all five steps of the sequential analysis. (ECF No. 20, p. 7-8).

Sullivan was diagnosed with cognitive disorder by three examining medical providers: 1) Dr. Morse / PA Chandler; 2) Dr. Morgan; and 3) Dr. Eargle. (AR 459, 608, 612.)

    1. <u>Dr. Morse / PA Chandler.</u>

Dr. Morse / PA Chandler diagnosed Sullivan with major depressive disorder, recurrent, moderate cognitive disorder, not otherwise specified ("NOS") (Axis I) in 2008. AR 459. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM–IV) defines "Cognitive Disorder Not Otherwise Specified" (294.9) as follows:

> This category is for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementi as, or amnestic disorders listed in this section and that are not better classified as Delirium Not Otherwise Specified, Dementia Not Otherwise Specified, or Amnestic Disorder Not Otherwise Specified.... Examples include 1. Mild neurocognitive disorder: impairment in cognitive functioning as evidenced by neuropsychological testing or quantified clinical assessment, accompanied by objective evidence of a systemic general medical condition or central nervous

> system dysfunction ... 2. Postconcussional disorder: following a head trauma, impairment in memory or attention with associated symptoms [.]

*Dschaak v. Astrue*, No. CV 10-1010-PK, 2011 WL 4498832, at *19 (D. Or. Aug. 15, 2011), *report and recommendation adopted*, No. CV-10-1010-PK, 2011 WL 4498835 (D. Or. Sept. 27, 2011) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 179–80 (4th ed. 2000)). Dr. Morse / PA Chandler examined Sullivan and noted that she reported a stroke in 1981 resulting in cognitive problems including memory problems. AR 459. After testing and observing Sullivan, Dr. Morse / PA Chandler reported that Sullivan's performance suggested "functioning ability within the borderline to low average range, with moderately fluctuating attention and concentration, and moderately decreased pace." *Id*. As a result of Sullivan's impairments, Dr. Morse / PA Chandler concluded that she "is likely to have moderate to marked difficulty understanding, remembering, and carrying out even simple job instructions." *Id*.

         2. <u>Dr. Morgan.</u>

In 2013, Dr. Morgan diagnosed Sullivan with major depressive disorder, recurrent, severe with history of auditory hallucinations (Axis I) and borderline intellectual functioning per psychological testing administration of the WAS-III in 2008 (Axis II). AR 608. Dr. Morgan observed that Sullivan presented "with a marked impairment in her concentration, persistence and pace as noted on the mental examination [and] psychological testing …" AR 609.

         3. <u>Dr. Eargle.</u>

Dr. Eargle diagnosed Sullivan with major depressive disorder, recurrent, mild, and cognitive disorder, NOS, provisional by history (Axis I). AR 505. Dr. Eargle described Sullivan as "somewhat childlike throughout the evaluation." AR 503. Further, Dr. Eargle observed that Sullivan had difficulty with the demands of the evaluation, and her thought process was disjointed and vague. AR 503-04. Based on her evaluation, Dr. Eargle noted that Sullivan's remote memory was very poor, concentration was mildly impaired, and recent memory was mildly impaired. AR 505. Dr. Eargle noted that these symptoms were consistent with cognitive disorder, NOS, which cannot be treated with medication, and were likely to persist indefinitely. *Id*. As to work limitations, Dr. Eargle found that Sullivan would likely have difficulty understanding and

remembering instructions and would likely require "multiple presentations of information and additional prompts and cues to remember instructions." AR 506.

### 4. Sullivan's Testimony.

Sullivan described symptoms consistent with those noted by the three examining medical providers when she testified before the ALJ. AR 56-83, 100-124. She testified that she gets easily confused. AR 64. She testified that she had difficulty with simple reading and writing. AR 69, 102. She did not believe she could adequately concentrate for an eight-hour workday. AR 113. If Sullivan did attempt to work, she would "get mixed up, and forget stuff, and I get – I start becoming upset because I get embarrassed when I forget." AR 67. When she became upset and embarrassed, she would have panic attacks, get angry and would need to go someplace quiet. AR 67-68. She also testified to having a tendency toward becoming violent when angry. AR 114-15.

### 5. The ALJ's RFC Evaluation Was Not Supported by Substantial Evidence.

The ALJ found that Sullivan had severe mental impairments that included depression and anxiety. AR 23. The ALJ proceeded in the sequential analysis and created an RFC limiting Sullivan to work classified as "simple, as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2, as routine and repetitive." AR 28. The ALJ limited the RFC further, finding that Sullivan "needs to work in a low stress job, as defined as having only occasional decision making only occasional changes in a work setting. She can have occasional interaction with the general public and only occasional interaction with coworkers." *Id*.

However, the ALJ excluded the cognitive disorder diagnosis from the RFC. AR 23. In doing so, the ALJ necessarily rejected the diagnoses of three examining medical providers. "In order to reject an examining physician's opinion, 'the ALJ has to give clear and convincing reasons.... Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012) (quoting *Regennitter v. Comm'r. of Soc. Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir. 1999)).

Here, the ALJ rejected the medical opinion of Dr. Morse / PA Chandler due to numerous instances of what the ALJ considered to be "inconsistent" statements by Sullivan, which the ALJ

10

went to great lengths to detail in his written opinion. AR 30. The ALJ rejected the medical opinions of Dr. Morton and Dr. Eargle concerning Sullivan's cognitive disorder, at least in part, in a similar fashion. AR 33, 39. However, there is no indication that these medical opinions are based primarily on Sullivan's own subjective statements.[5] To the contrary, Dr. Morse / PA Chandler and Dr. Morton appear to have administered a number of objective psychological tests and made findings based on their own objective observations. AR 459-62. For these reasons, the ALJ's reasoning that the medical opinions concerning cognitive disorder relied too heavily upon Sullivan's subjective statements does not appear to be a legitimate basis for rejecting them. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008) (providing that substantial evidence did not support ALJ's rejection of opinion of physician who performed comprehensive psychiatric evaluation where ALJ rejected the opinion, in part, because it was based too heavily on claimant's "subjective" statements). Because the ALJ excluded cognitive disorder from Sullivan's list of impairments and instead characterized her diagnosis as depression and anxiety, the RFC determination was "incomplete, flawed, and not supported by substantial evidence in the record." *Hill*, 698 F.3d at 1161 ("Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, 'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'") (citations omitted).

### 6. The ALJ's Error Was Not Harmless.

The Commissioner cites *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007), for the proposition that where an ALJ finds other severe impairments at step two, it is harmless error for the ALJ to find other impairments not severe as long as the ALJ discusses the effect of the non-severe impairments throughout the remainder of the sequential analysis. (ECF No. 20, pp. 7-8). In *Lewis*, the ALJ found a severe impairment at step two of status post laminectomy and diabetes mellitus and that due to these impairments, the claimant could not perform heavy lifting. *Lewis*, 498 F.3d at 910. The Ninth Circuit in *Lewis* found harmless the ALJ's failure to consider the claimant's knee bursitis a severe impairment because the ALJ extensively discussed the

---

[5] The numerous inconsistencies identified by the ALJ appear to be consistent with someone suffering from cognitive disorder.

11

claimant's physical limitations from bursitis at step four of the analysis. *See id*. at 911. The Commissioner further argues that this case is especially problematic because all of the physicians that diagnosed Sullivan with cognitive disorder also diagnosed her with depression and anxiety. (*Id*., p. 8.) According to the Commissioner, Sullivan did not allege limitations exclusive to cognitive disorder. (*Id*.)

The Court does not find persuasive that the ALJ's failure to consider Sullivan's cognitive disorder at step two constitutes harmless error. Unlike *Lewis*, the ALJ in this case effectively dismissed Sullivan's symptoms associated with cognitive disorder, which include, but are not limited to, marked impairment in concentration, persistence and pace. AR 459, 609. In other words, these additional limitations combined with the limitations already found by the ALJ may lead the ALJ to conclude on remand that Sullivan is not capable of performing even simple work, which would be consistent with the findings of Dr. Morse / PA Chandler. AR 459. Furthermore, the combined effect of all of Sullivan's impairments could lead the ALJ to find on remand that Sullivan is incapable of engaging in regular, full-time work, even if the work was classified as simple.

> 7. <u>The Hypotheticals Posed to the Vocational Expert at Step Five Were Flawed</u>.

The Ninth Circuit has stated the following with respect to the fifth step of the sequential analysis:

> At the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r. of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010). The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record. *See Valentine v. Comm'r. of Soc. Sec. Admin*., 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Desrosiers v. Sec'y. of Health & Human Servs*., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993) (internal quotation marks and citation omitted).

*Hill*, 698 F.3d at 1161–62.

As discussed above, the RFC in this case was limited to reflect Sullivan's depression and anxiety impairments, but did not include additional restrictions relating to Sullivan's cognitive disorder.  Therefore, the ALJ asked an incomplete hypothetical question of the vocational expert. Specifically, the hypothetical's assumption concerning Sullivan's residual functional capacity that she can complete a normal workday and workweek without interruptions from the combination of all of her impairments, and that she can maintain regular attendance, are not supported by the record. *See Hill*, 698 F.3d at 1162 ("Because neither the hypothetical nor the answer properly set forth all of [the claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." (citation omitted)).

### C. Sullivan Waived Her Argument Concerning COPD.

Sullivan argues that the ALJ improperly evaluated her COPD impairment because the ALJ lacked the qualifications to interpret records of Sullivan's testing and treatment concerning the condition. (ECF No. 17, pp. 26-27).  The Commissioner points out that Sullivan failed to raise this specific point in her appeal to the Appeals Council. (ECF No. 20, p. 14.)  Indeed, Sullivan's brief appears to omit any specific argument that would provide adequate notice to the Appeals Council that COPD was a significant point of contention on appeal. AR 445-46.   The well-established waiver applies where appellants fail to raise issues at their administrative hearings in order to preserve them on appeal before this Court. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999) (citing *Avol v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir. 1989)).  The waiver rule is especially applicable in instances where the claimant is represented during the underlying proceedings, as Sullivan was in this case. *See id*. This Court concludes that Sullivan did not adequately raise an argument specifically as to her COPD impairment through every step of the administrative process, and as a result, Sullivan's argument in Part C of her brief is waived.

### VI.     REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be

remanded to this Commissioner for further administrative proceedings.  Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1020 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Id.* at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy.  *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

Here, remand is appropriate because, as discussed above, the ALJ's residual functional capacity determination was flawed and the hypothetical question was incomplete and included incorrect assumptions.  The ALJ did not consider the combined effect of all of Sullivan's mental impairments in formulating the RFC.  Sullivan's symptoms associated cognitive disorder include, but are not limited to, marked impairment in concentration, persistence and pace. AR 459, 609. The ALJ included assumptions in the hypotheticals posed to the vocational expert that Sullivan is capable of performing simple work, can complete a normal workday and workweek without interruptions, and that she can maintain regular attendance. *See Hill*, 698 F.3d at 1162 (citing *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)).  After review of the entire record, this Court has serious doubts about those assumptions when Sullivan's cognitive disorder impairment is considered in combination with her other impairments, but will remand for further proceedings to correct the errors identified in this decision.

### VII.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that Sullivan is not disabled is not supported by substantial evidence in the record as a whole.  Accordingly, this Court GRANTS Sullivan's appeal from the administrative decision of the Commissioner of Social Security.

\\\

The Clerk of this Court is DIRECTED to enter judgement in favor of Plaintiff, Sharon R. Sullivan, and against Carolyn W. Colvin, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __October 5, 2016__              /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE